UNITED STATES DISTRICT COURT
DISTRICT OF WEST VIRGINIA
(Charleston) DIVISION

1  ROY FRANKLIN HILLBERRY II # 55498

2          Plaintiff,

3

4  V.                                    Civil Action No. 2:13-cv-21894

5

6

7  Lt. R. ELDER, in his individual

8  capacity; SGT W.O. STEWART,

9  in his individual capacity; CORP          JURY TRIAL DEMANDED

10  RETA MAYS, in her individual

11  capacity; OFFICER RICHARDS,

12  in his individual capacity; OFFICER       COMPLAINT FOR INJUNCTIVE

13  ADAMS, in his individual capacity;        AND DECLARATORY RELIEF

14  OFFICER TIMOTHY ABNER, in

15  his individual capacity; OFFICER

16  FREDERICK, in his individual

17  capacity; COUNSELOR JASON

18  A. HUTSON, in his individual

19  capacity; ADMINISTRATOR

20  GEORGE TRENT, in his individ-

21  ual and official capacities; CHIEF

22  of OPERATIONS JOHN V. LOPEZ,

23  in his individual and official capacities;

24  DEPUTY DIRECTOR, PAUL O'DELL,

25  in his individual and official capacities,

26          Defendants.

FILED

AUG 15 2013

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

## COMPLAINT

Plaintiff, Roy F. Hillberry, pro se, hereby states his complaint as follows:

## INTRODUCTION

1. This is a case where the plaintiff was harrassed, verbally assaulted, physically threatend, intimidated, attacked and severely beaten on two (2) seperate occassions by numerous correction officers. Despite the fact that plaintiff made repeated cries for help, via Letters, verbal complaints and grievances prior to the beating(s), his cries for help fell upon deaf ears.

2. Threats were made, and promises to hurt plaintiff were Kept, and was carried out on May 10th & May 11th 2012. Over the course of two (2) days the plaintiff was sprayed with (OC) twice (back to back); Arm bared, placed in a figure four leg Lock, pressure applied to his R-axis, Wrists and ankles twisted and dislocated, Chest stomped on, Kicked, punched in his face and body, chest-bumped, elbowed & Kneed, stomped and spat on. As a direct result of the (2) unprovoked, unjustified beatings, plaintiff suffered substantial and significant injuries.

3. Supervisory officials Knew that correction officers at N.C.R.J. had a history of, and had the propensity to regularly use excessive force on inmates, to make them obey and to enforce rules for self-serving retaliatory reasons to inflict pain, seek revenge and for the very purpose of punishing inmates.

4. Supervisory officials had actual Knowledge of the abuse and was put on Notice through use of force reports, incident reports, documented and verbal complaints by Lawyers and inmates, personal observation, common sense, Video, and the routine occurances of the Video footage coming up missing, false reports, high number of use(s) of (excessive) force incidents, and through the plaintiffs Letters, verbal complaints and grievances

5. Supervisory officials abdicating (ed) their duty to supervise, monitor, investigate past and current use(s) of force incidents, they dropped the ball and deliberately permitted a pattern of excessive force to develope and persist, giving guards unsupervised authority to use force at any time for any reason.

6. Finally supervisory officials had a job to do, but did not do it. They had a obligation and a duty to prevent & protect the plaintiff, and failed miserably, directly causing, if not condoning the plaintiff to be severely beaten on (2) two consecutive days, and directly causing his injuries.

## JURISDICTION

7. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the First, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343 (1-4), and 2202.

## VENUE

8. Venue is proper under 28 U.S.C. § 1391(b), because the Defendants reside in the District of West Virginia, and because a substantial part or all of the events or omissions giving rise to Plaintiff's claims occurred in the District of West Virginia.

## PARTIES

9. Plaintiff is currently an inmate at Mount Olive Correctional Complex (MOCC), Mt. Olive, West Virginia.

10. Defendants W.O. Stewert, Reta Mays, Richards, Adams, Timothy Abner and Frederick were at all time relevant correctional officers employed at North Regional Central Jail (NCRJ) and acting under color of state law.

11. Defendant Jason A. Hutson were at all time relevant a counsELOR employed at (NCRJ) and acting under color of state laws.

12. Defendant Lt. R.L. Elder were at all time relevant correctional officer and supervisory officer employed at NCRJ and acting under color of state law.

13. Defendant George Trent were at all time relevant the Administrator of NCRJ and acting under color of state law.

14. Defendant John V. Lopez were at all time relevant the Chief of Operations of NCRJ and acting under color of state law.

1      15. Defendant Paul O'Dell were at all time relevant the Deputy
2  Director of NCRJ and acting under color of State Law.
3
4               STATEMENT OF FACTS
5      16. Between the months of January 2012 and June 2012 plaintiff was
6  threatend by C.O. Fredricks, Sgt. Stewart and Lt. Elder on numerous
7  occassions.
8
9      17. Plaintiff feared for his safety so much that he even requested that
10 his lawyer be present during the Adseg hearings, due to named officers actions
11 and physically threats toward him. (Ex-15)
12
13     18. On or about Jan 13th 2012 through August, plaintiff did submit
14 numerous letters, grievances and verbal complaints to George Trent, The W.x.R.
15 J.A, WV Regional Jail Authority, regarding the harrassment, threats, remarks.
16
17     19. Plaintiff did not receive any intervention, assistance or help by the
18 Supervisory officials. (Ext.7 -8), (Responses from Lopez & O'dell and Trent)
19
20     20. On May 9th, 2012 plaintiff was locked inside his cell #3 in pod C-2,
21 when C.O. Fredricks, C.O. Garner and cpl. Alberry came to his cell, and informed
22 Hillberry that he needed "to pack his shit, he was moving" Plaintiff ask why
23 he was being moved. C.O. Fredricks told plaintiff, "don't worry about it, just
24 pack your shit and shut your mouth". Corp Alberry exited the pod.
25
26     21. Plaintiff said, "Damn! tough guy", "I'm packing my shit, where am I
27 moving too,?"

22. C.O. Fredricks, replied, "thats none of your concern", and that I needed to Learn how to Keep my mouth shut, before somebody shut it for me. Plaintiff ask Fredricks if, "he was threatening him" Fredricks said, "No its not a threat its a promise".

23. Plaintiff, packed up his property and was escorted to Adseg.

24. On May 10, 2012, at 3:00 pm (1500), plaintiff was locked inside his cell #10, pod A-5 when C.O. Abner, and C.O. Abner said, "Listen before we even go there today, I'm not gonna play any games today or am I going to argue with you about anything", "Make this easy on both of us, Obey all of my orders without questioning them", "Just go in here sit down and Keep your mouth shut".

25. Plaintiff ask, "where they was going", Abner said didn't you just hear me, tell you to Keep your mouth shut. dont worry about where your going, you'll know when you get there".

26. Plaintiff said, "yeah! Whatever, tough guy." C.O. Abner said, "Consider that your one and only warning today", "We are not putting up with your shit today, "Asshole" "We run this jail, not you!."

27. Plaintiff was escorted to the Jails hearing office by C.O. Abner.

28. It was abundantly clear to plaintiff that Something was not right. Plaintiff had a gut feeling that Something was not right, and "Out of the norm" Out of the past 3-4 Adseg hearings, plaintiff never had one in this specific room, it was closed in, and Furthermore there were way more guards then

page 6 of 30

1 usaual, and you could cut the tention in the air with a knife. Plaintiff sensed
2 that this was a "set up" and began fearing for his safety. Although reluctant
3 plaintiff entered the room and sat down. See (Ex-1) (Diagram of Room).
4

5      29. Plaintiff ask Lt. Elder, "whats this", "whats going on"?. He was
6 then informed by Lt Elder that they were going to conduct his ad seg hearing.
7

8      30. Plaintiff and Lt. Elder did exchange words back and forth, about
9 why he was going to be adseged. The exchange became heated.
10

11      31. Lt. Elder said that plaintiff, "was a liar" and plaintiff said that
12 he did not do what he was being charged for.
13

14      32. Plaintiff called Lt. Elder a liar. and his accusations were false.
15

16      33. Lt. Elder got upset and yelled "get him out of here".
17

18      34. Lt. Elder knew at this point or should have known, that the plain-
19 tiff posed No threat to him, they were simple debating the facts, plaintiff
20 and Lt. Elder were at a disagreement, but plaintiff never became violent,
21 Never physically threatend anyone, never made any movement or gesture to-
22 ward Lt. Elder. He could not have preceived the plaintiff as a threat to
23 him, Lt. Elder sat, 10 feet away from plaintiff behind a desk, with
24 two guards on both sides of plaintiff.
25

26      35. There was absolutely No way possible that the plaintiff could have
27

1 even gotten to Lt. Elder much less physically harm him, with (2) guards
2 just 2 feet away from him.
3
4        36. Lt. Elder ordered the guards, "to get him out of here",
5
6        37. Plaintiff did not disobey this order, he stood up and headed out
7 toward the rooms exit door as shown in "Diagram" (EX-1).. infact not only
8 did plaintiff not disobey this order, he was more then happy to get out of
9 the room, and did infact try to exit as stated in the reports see (Ext. 13-25)
10 All stating that plaintiff stood up and moved towards the door.
11
12        38. Plaintiff was not the aggressor here in this case, all he wanted to do
13 was get out of that closed in room. Plaintiff was not combative, at any point.
14
15        39. Lt. Elder was the aggressor, this is proven by the fact that he got
16 up from his seat, behind the desk and aggressively charged toward the plaintiff.
17 who was not combative at all, for no apparent or logical reason at all. Other
18 to confront, provoke and physically assault the plaintiff.
19
20        40. Lt. Elder alleges in his report that he got up from behind the desk
21 to "open the door" for the plaintiff. This is a lie, and if you look at the dia-
22 gram "EX-1", you will clearly see why. Not only was the Lt. the farthest
23 person in the room from the Exit door. There were (2) two escorting guards
24 right there beside the plaintiff, "escorting" him and were more then able to
25 open the door to exit, for the plaintiff. Infact Sgt. Stewart did open the door.
26
27        41. Sgt. Stewart opened the Door, Not Lt. Elder.

page 8 of 30

42. Tim Abner, the other escorting officer, saw exactly who opened the door, he was standing right beside the plaintiff and saw with his own eyes that Sgt. Stewart did infact open the door. See (Ex-22)(C.O.s Timothy Abners report) "I saw Sgt. Stewart open the door."

43. Lt. Elder outright Lied in his report, and did not get up out of his seat, from behind the desk to "open any door". He got out of it for one reason and one reason only, to do exactly what happened, to assault the plaintiff.

44. Plaintiff tried to avoid the Lt. and as the evidence proves, and reports state plaintiff stood up and preceded toward the door to exit the room, and way moving away from Lt. Elder when he stood up and rushed toward the plaintiff and "chest bumped" him, which initiated the use of excessive force. See (Ext. 13-25)(Donna Kuroski incident report) (Ex-215)

45. Plaintiff was already at the door when Lt. Elder rushed him. The door was being held open by Sgt. Stewart, the plaintiff would have been able to exit, but C.O. Abner was standing in the door way.

46. C.O. Abner was standing in the door way blocking, essentially trapping the plaintiff from leaving the room, giving Lt. Elder enough time to get to them.

47. Plaintiff strongly maintains that this was a premeditated assault. He was going to be assaulted on May 10, 2012 one way or another.

## MAY 10 2012- USE OF FORCE

1  48. Lt. Elder, jumped up out of his chair, behind the desk,
2  for no reason, and literally ran toward the plaintiff, who was trying
3  to exit the room.
4
5  49. Lt. Elder had his chest poked out, charging the plaintiff, he
6  at a fast pace, striking the plaintiff with his chest. "chest bumped him,
7  knocking the plaintiff into the wall.
8
9  50. Lt. Elder then pulled his arm back with a closed fist and tried
10 to punch the plaintiff in the face. Plaintiff raised his arms and tried
11 to block the punch pushing Lt. Elder away from him.
12
13 51. Sgt. Stewart football tackled the plaintiff to the ground, and a
14 vicious unjustified attack ensued.
15
16 52. The plaintiff was viciously beat for about 10 minutes straight.
17 by numerous officers.
18
19 53. Cpl. Mays in her incident report states that she "attempted to se-
20 cure plaintiffs head by using pressure to the R-Axis times two. (2xs) (Ex-24)
21
22 54. Cpl. Mays report clearly states that this, "pressure to R-Axis got
23 him to release we were able to get him in mechanical restraints...."
24
25 55. C.O. Adam's report states he, "secured his right arm & hand"; "he applied
26 a straight arm bar and held it untill the inmate was able to be cuffed". See (Ex-18)
27

56. C.O. Mark Richards report states that he "ran into the hearing office...", "I figured foured the legs and applied pressure to the ankle untill inmate Hillberry was being compliant". He then states that, "Counster Jason put leg restraints on inmate"... (Ex. 21-21(a))

57. Richards report further states that, "Hillberry was trying to fight back again, so I applied pressure to his left ankle until inmate Hillberry was being compliant to are orders". (Ex. 21)

58. Both Richards and Counselor Hutson stated in their reports that they applied mechanical restraints. But Richards began to crank, twist and apply pressure again to plaintiffs ankle. (Ext. 20-21(a).) even after he was in leg restraints.

59. Richard did not apply this pressure, and twist the plaintiffs ankle untill it nearly dislocated to, "double lock them", because he never double locked them. He said he placed plaintiff in a ankle lock again untill he complied with orders. Then why didn't he double lock the leg restraints once plaintiff complied?. Had he "double locked them" like he said or claimed he wanted to, then the leg restraints would not have tightend so tight that the nurse, "Melissa Mathess" had to tell the guards that they were "to tight" in booking. see (Ex-28). (when you "double lock" handcuffs & leg restraints it prevents, stops them from tighten-ing up.) Like here, with plaintiff restraints.

60. Richard applied this force to inflict pain.

61. This is also proven by Counselor Hutson's report which stated,

1   he along with C.O. Richards applied restraints to his legs. He never states
2   that plaintiff "was trying to fight back". (Ex-20)

3

4      62. Counselor Hutsons report states he and Fredricks had a hold of
5   his wrist.

6

7      63. Lt. Elder's report states, "he had control of the <u>left arm</u>". (Ex. 14(a))

8

9      64. The reports as a whole state the following; Cpl. Mays was "securing
10  the head", "by using pressure to R-axis, times two". (Pg 10 at 19-53)(EX-24). And
11  C.O. Adams "secured his <u>right arm</u> & hand". He, "applied a straight arm bar and <u>held</u>
12  it untill the inmate was able to be cuffed". And, C.O. Richards "figured foured
13  the legs and applied pressure to the ankle untill inmate complied". (Pg 10 & 11. Line
14  25 & 26 at 55) & ( Pg 11. Line 1 at 56)(Ext. 20 & 21). And Counselor Hutson after assisting
15  Richards with appling leg restraints "I along with fredricks had a hold of his wrist."
16  Importantly, all reports above state that Sgt. Stewart during all of the above
17  use of force, sprayed plaintiff with Oleoresin capsicum. "OC". (EX-13).

18

19     65. Its hard to imagine how the plaintiff was resisting with the above
20  statements of defendants stated in 53. show that plaintiff was not only non-
21  resistant he could not resist or even move his extremities, he was in a "straight(R).
22  arm bar", Lt. Elder had control of his left arm. (Ext 18 & 14). Hutson and Fred-
23  ricks had his wrist & hands. (EX-20). Richards had plaintiff in "figure four leg
24  lock", Cpl Mays had "control of his head". Additionally the plaintiff was sprayed twice
25  directly in the face with "OC".

26                      <u>MAY 16 2012-USE OF FORCE</u>
27     66. After the Lt. Elder assaulted the plaintiff with a "chest bump", as

1  set forth in Line 49. and the plaintiff was viciously beat for about (10)minutes.
2  The plaintiff was in full restraints for at least (8)minutes of the beating.
3
4      67. Plaintiff maintains that he was assaulted by Lt. Elder then tackled
5  to the ground where Sgt. Stewart placed him in a choke hold, Cpl. Mays was hold-
6  ing his head adding pressure to his axis, another officer was literally trying to
7  break his right arm, another CO. had his other arm. At the same time he felt
8  another CO. trying to break his legs, twisting and cranking his ankle nearly
9  dislocating them, Plaintiff felt the leg restraints being put on, he was then
10 placed in handcuffs, completely and in full restraints, this all happened with
11 in minutes. 2-3 minutes plaintiff was in full restraints.
12
13     68. Plaintiff contends this is when the beating started to get worse.
14 He go could feel his wrist and arm dislocate, he felt his ankle being twisted
15 to the point of dislocation. He was being punched, kicked and stomped on
16 all over his body. Sgt. Stewart sprayed him in his face twice with (2)
17 two seperate can's of "OC", after plaintiff was in full restraints. see (Ex-10)
18 "Melissa Bunner"(LPN) report. This all took place after plaintiff was in full restraints.
19
20     69. Melissa Bunner's report states," Sgt. Stewart did spray Mr. Hillberry
21 with O.C. spray after Hillberry was secured in handcuff and shackles. See
22 (Ex-10).
23
24     70. After and during the vicious attack plaintiff never resisted.
25
26     71. Plaintiff begged and pleaded to the assaulting officers, when they
27 began to beat him, "Please stop!"; "what are you doing" "I'm not resisting"

1 "Stop".

2

3   72. Plaintiff was not resisting and as the reports show his head, his arms
4 his wrist, his hands, his legs and ankles were being held and were completely
5 in the control of the guards minutes after he was assaulted by Lt. Elder.

6

7   73. Even after plaintiff was placed in full restraints he was still viciously
8 beat as reports show. (Ex. 21) Richards states after "I placed leg restraints on
9 plaintiff I applied more pressure to his ankle" and (Ex. 10) Bunner states Sgt.
10 Stewart sprayed plaintiff with O.C. after he was in restraints".

11

12   74. Plaintiff was not fighting or resisting, he was splayed on the floor
13 defenseless in prone position on his belly and face down while the officers
14 continued to beat him, and spray him with a chemical agent. "Oc".

15

16   75. All the plaintiff could do was scream in agonizing pain. "Stop!" I'm
17 not resisting" "You dirty Mother fuxckers" "you pussies" etc...

18

19   76. Plaintiff Looked right at Sgt. Stewart and said "what are you doing"
20 "I'm not resisting".

21

22   77. Sgt. Stewart says, "fuck you punk"; "It's to late for that", takes
23 a canister of O.C. and sprays the plaintiff directly in his face and eyes.
24 However the canister Malfunctioned and only sprayed a couple of bursts.

25

26   78. Sgt. Stewart keeps trying to spray the canister shaking it, he
27 then got angry because it would not spray. and struck the plaintiff

1 several times in the shoulder and head. Another officer then handed him
2 another canister of "OC". Sgt. Stewart started to spray the plaintiff again
3 for no apparent reason. Plaintiff was defenseless, in full restraints, unable
4 to move.

5

6     79. finally, the plaintiff was stood up and led out of the room.

7

8     80. According to Co. Nicholsons report, he states that once plaintiff
9 was in the hallway he "then started the Video Camera/recorder". See (EX. 16)

10

11     81. In route to the rec yard the Video will show that the plaintiff in
12 full restraints was in route to the rec yard and the escorting C.O.s. C.O.
13 Adams and CO. Richards bounced the plaintiffs head & face and body into
14 numerous walls for no reason, the plaintiff could not see anything, and was
15 not resisting.

16

17     82. Plaintiff was placed on the rec yard, and immediately pushed down
18 to the ground where the beating continued. Plaintiff was again attacked

19

20     83. Adams and Richards, Kicked and stomped the plaintiffs body and
21 legs, Cpl. Mays also began to Kick the plaintiff. One of the officers came
22 up from the side of plaintiff and stomped his head Knocking the plaintiff
23 unconscious.

24

25     84. Plaintiff does not know how long he was unconscious, however believes
26 that he was beat even while he was unconscious. Plaintiff knows that this
27 was all on Video camera, and will prove his vicious attack and beating.

85. Plaintiff began to regain consciousness, and heard Cpl. Mays voice say stop! and something else about somebody coming but couldn't really understand what she was talking about, he was dizzy and confused, and disoriented to what was going on.

86. Cpl. Mays bent down face to face to the plaintiff and spit in his face and said "How do you like that Motherfunker" and you aint that tough now are you? See (Ex-3)(plaintiffs grievance.)

87. Plaintiff was then led from the rec yard down the hallway towards the booking area. Administrator George Trent was standing by the sallyport in the booking area. Plaintiffs pants fell down to his ankles, and C.O's. began to laugh as if it was funny that the plaintiff could not even pull his pants up.

88. George Trent said "I run this jail" "This can happen everyday". This to was being video recorded.

89. Contrary to reports the medical department can confirm that plaintiff was not seen by a Nurse on the Rec yard.

90. Once the plaintiff was in booking he was then assessed by Nurse Melissa Mathess at about (1550). (Ex-28)

91. Nurse Mathess noted "a raised Knot above right elbow." "Leg restraints checked and were found to be to tight. "Indentions noted around Lower Legs both above ankle", "Unable to tell if any abnormalities were present".

92. Nurse Mathes noted that Plaintiff "complained of pain in both hands and feet" she concluded plaintiff, "needs to be reassessed" "EOR". (Ex-22)

93. Plaintiff was placed in the shower by Nicholson, Fredricks and Adams in full restraints and fully dressed.

94. As the plaintiff tried to rinse the pepper spray out of his eyes and face, he could hear the guards snickering and laughing at plaintiff.

95. Plaintiff ask, "what the fu*k is so funny"?, "Damn did ti'all have that much fun today fu*king me up"?.

96. C.O. Nicholson said "we don't enjoy any of this" and this isn't fun to me". Plaintiff said "I can't tell".

97. Plaintiff was then escorted to holding cell four. There soon after, C.O. Fredricks came to plaintiff cell in booking, started conversating with plaintiff. Fredricks stated that, "It wasn't personal, but he needed to learn how to keep his mouth shut, and go along with the program".

98. Plaintiff said "what the fu*k do you expect me to just let ti'all, beat the shit out of me for no reason,"? Fredricks stated that if you would have listened and kept your mouth shut in the first place this all could have been avoided".

99. Fredrick then said "Now listen Roy! If your smart you will just take this one on the chin, and as of right now were not gonna even write

1   you up", "However if you go filing paperwork, then so will we," "We can do
2   this everyday and what happened today can happen everyday". He then stated
3   that "he didn't care, either way he was going home at the end of day".
4
5        100. Plaintiff said "Fuxk that! I'm not about to let u-all get away
6   with what you did to me today". "Matter fact, first chance I get I am
7   calling my Mother, and have her contact the WV. State Police".
8
9        101. Fredricks said, "go right on ahead a call your mommy" "See what
10  that getcha". "I'll see ya tommorow", "tough guy".
11
12       102. Nurse Mellsa Bunner did return to booking to reassess the plain-
13  tiff. Injuries noted at that time of (17:30) on May 10, 2012, just hours after
14  the vicious assault and beating were as follows, but not limited to: "raised
15  knot above right elbow", "Indentions around lower legs both above the ankle",
16  "Plaintiff complained of pain in both hands and feet" ("Nurse Mathess report"
17  (Ex-28), And Nurse Bunner noted at (17:30) "Injuries to Left wrist and ankle"
18  "Hillberry does have a knot on the Left wrist and the hand is slightly out of
19  allingment with forearm". (Dislocation). "There is a small amount of
20  swelling noted to the Left ankle and his gait does favor the Left side".
21  (Ex-30) (Bunners report).
22
23       103. Nurse Bunner concluded in her report, and did notify the defendants
24  Cpl. Mays & Lt. Elder that the plaintiff, "needed to be transported to the
25  emergency room....", "...due to injurie...". "...he sustained during an
26  altercation."
27
28                     page 18 of 30

104. At (1759) plaintiff was taken from the (NCRJ) facility enroute to Camden Clark medical center st.

105. As soon as plaintiff arrived back at NCRJ, he requested to use the telephone, upon which he called his mother "Etta Hillberry". Plaintiff explain that he just got back from the emergency room 'due to his injuries that he suffered from numerous guards, who attacked him and beat him earlier that day for no reason. He insisted that his Mother contact the WV. state police and request an investigation into the beating.

106. Even though plaintiff was warned, essentially threatend by CO Fredricks, that if he filed any paperwork, what happend to him on May 10, "can happen everyday", Plaintiff did go ahead and file a grievance the morning of May 11th 2012. (EX-3) '

<u>MAY 11th 2012 - USE OF FORCE</u>

107. On May 11th, plaintiff was locked in his cell in holding, when Fredricks approached his cell #4, Fredricks said "Happy Birthday Hillberry"!, "how ya feel'en today"?, Plaintiff said "fuck you!" "how ya think I feel?", "I'm hurting all over, I cant even take a shit".

108. C.O. Fredricks laughed and said "well you cant be hurting that bad, because you manage to call your mommy and file a grievance". Plaintiff said "whatever"!. "what do you want, I aint playing this shit today".

109. Fredricks told plaintiff that he was there to give the plaintiff a shower and clean clothes", and "to consider it a B-day present".

110. Plaintiff was then placed in full restraints including belly chain, and escorted to the shower room in booking.

111. As soon as the plaintiff entered the shower room he heard the door slam shut, as he turned to see that it was just him and CO. Fredricks, and without any warning Fredricks stepped on his leg restraint chain between his ankles and pushed the plaintiff face down on the ground,

112. CO. Fredricks said "I told you what was going to happen, you stupied mother fukker", "call your mommy now", "file some more grievences". Fredricks literelly jumped up and down on the plaintiff chest, stomping and kicking the plaintiff in his stomach and ribs, untill the plaintiff lost his bowels, and defecated on himself.

113. After the plaintiff defecated on himself, the smell of feces seemed to bring CO. Fredricks back to his senses and he stopped kicking the plaintiff. But not before he had assaulted the plaintiff for nearly (5) minutes.

114. Plaintiff screamed in agony, and ask Fredricks, "what are you doing"? Fredricks stated that Lt. Elder told him to "fukk him up good", and this is what you get when you fuck with us. he guarnteed that the plaintiff would be written up and out side charges would be filed against him. Fredricks told plaintiff to "call his mommy and tell her about happend again, see where that got him." He then called the plaintiff a "pussy", and said look at cha now tough guy. done went and shit all over yourself," Get in the shower and clean yourself up"

115. Fredricks then remove plaintiffs restraints and allowed the plaintiff

1  to shower. Plaintiff then heard a soft knock at the door. Couldn't hear what
2  was said.

3   116. CO. Fredricks did give the plaintiff clean clothes, placed plaintiff
4  back into ~~his holding~~ full restrants then escorted him back to his cell.

5

6   117. Once CO. Fredricks, left booking, the plaintiff ask the booking
7  officer, did he just see what happen, and that he needed medical down here,
8  He just got the shit beat out of him Literaly!. Booking officer said, "I did
9  not see anything", shaken his head he said, "when ya going to learn Hill-
10  berry"?.

11

12   118. At that point the plaintiff relized that nobody was going to help him
13  and they were all buddies. Plaintiff also knew one thing he did not want to
14  ever be beat like that again.

15

16   119. Plaintiff did receive a number of additional injuries due to the May
17  11, 2012, beating, specifically the plaintiff began to have constant chest pain, it
18  felt like he was having a heart attack, Plaintiff had trouble breathing and suff-
19  ered numerous bruised ribs, had no feeling in his left thumb, continuous
20  head aches, severe pain in his back stomach and rib area.

21

22   120. Although the plaintiff feared for his life, and was reluctant to do
23  so, Plaintiff filed a grievance on the use of excessive force and the vicious
24  beating inflicted on him by Co. Fredricks. See (EX-9) & (EX-32)(grievances).

25

26   121. Plaintiff was examined by a doctor due to severe chest pain On
27  May   2012, The nurse placed a "EKG" on plaintiff and concluded that

1  Plaintiff had some sort of blockage on the right side of his heart." He
2  believes It's a muscle strain", caused by trauma and heavy pressure applied
3  to the chest, heavy weight etc...
4

5    122. On 5-16-12 plaintiff filed a grievance requesting a polygraph
6  examinations despertly trying to uncover the truth about being viciously
7  attacked and beat two (2) days in a row. (Ex-5(a)-6) & (Ex-31)
8

9    123. Defendants attempted to cover up the May 10th 2012 use of excessive
10  unjustified force against plaintiff, after they realized that plaintiffs mother had
11  contacted the W.V. State police and requested that a investigation be conducted.
12 .

13    124. Defendants wanted the plaintiff to "just let it go", and wanted to, and
14  attempted to handle the use of force incident, "in house" as a simple incident
15  where "a inmate needed restrained". However, realized that they were not going
16  to be able to pull that off.
17

18    125. Officer Anderson of the WV State Police contacted Cpl. Mays the
19  night of the incident (May 10 2012), at the request of Etta Hillberry, (plaintiff mo-
20  ther). Cpl. Mays stated to Anderson that "the incident was a correctional
21  officer applying force to subdue an unruly inmate", and it would be an
22  internal investigation (handled in house), (Ex. 26(d))
23

24    126. Cpl Mays minimized and downplayed the fact that 6+ guards had
25  been involved and not a guard. She also left out that the plaintiff assaulted
26  a officer, simply because at that time the defendants had not had time to get
27  their stories straight. Had the plaintiff assaulted a guard, Cpl. Mays would

1 have not hesitated to include this fact in her statement to officer Anderson,
2 but she did not. Because the plaintiff did not assault anybody.
3
4     127. Cpl. Mays was caught off guard by the fact that plaintiff's mother
5 had contacted the WV State Police so fast, and had not yet fabricated the
6 story with Lt. Elder that the plaintiff assaulted him. As soon as Cpl. Mays
7 got off finished talking to the WV State Police, on May 10, 2012 she quickly
8 realized that they were in trouble and conspired with Lt. Elder and numerous
9 other friends and fellow officers to say that the plaintiff "shoved", Lt.
10 Elder and thats the reason why they viciously assaulted and beat him on
11 May 10, 2012. Hoping that it would justify the beating / use of excessive force.
12
13     128. Although the defendants tried to, and would have liked nothing more
14 then to handle the use of force internaly, "in house" they were not going to be
15 able to do that now, and needed to come up with a plan, this is when the cover up
16 story hatched into place, but Lt. Elder had no injuries that matched any kind of
17 a assault & battery. So they all said plaintiff "shoved" Lt. Elder.
18
19     129. Defendants scrambled to get their stories straight, tryed to back track
20 and cover their butts, however made many errors, and in the process falsified
21 reports, made numerous inconsistant & contradictoring statements. Outright
22 Lied in several reports, plaintiff has pointed to and outlined many of these
23 Lies and flaws, provided to the Court as (EX-2), (Inconsistant statements).
24
25     130. Defendants amazingly decided to flat out ignore, and turned a blind
26 eye to the May 11th, 2012 use of force and beating of plaintiff in the shower
27 room in booking by CO. Fredricks. Desp Despite the plaintiff cries for help

1  and grievances to supervisory officials. They just flat out did not ack-
2  nowledge, investigate or address any of the grievances, about the May 11th
3  2012 beating which caused severe injuries to plaintiff.
4

5       131. After the defendants got their stories straight and concocted their
6  story that the plaintiff shoved, ~~him~~ Lt. Elder, Lt. Elder on May 14, 2012, (4)
7  days after the incident went to the W.V. State Police and formally pressed
8  charges on the plaintiff for assault & battery. (Ex-12)
9

10      132. Instead of contacting the state police the night of the incident on
11  May 10, 2012, the plaintiffs mother had to contact them and report the incident.
12  Lt. Elder waited (4) days to contact the WV state police, to report that he had
13  been assaulted, but where was his proof of injury? The plaintiff certainly
14  had proof of his injuries.
15

16      133. Although the defendants were able to fabricate a quick story to try
17  and justify the use of excessive force incident to plaintiff by saying he assaulted
18  the Lt, they did not have any injury done to Lt. Elder to support this acc-
19  usation. This is proven when you look at Nurse Bunner's assessment of
20  Lt. Elder just after the incident.
21

22      134. Nurse Bunner assessed Lt. Elders injuries she concluded that, "Lt.
23  Elder was checked..." "... No bruising, Knots or abnormalties noted to the
24  back of Lt. Elders head where he states the pain is." "Small superficial
25  scratch noted on (L) side of mouth." (Ex-10)..
26

27      135. No injuries were found because the plaintiff never assaulted him.

1    No injuries were found because the Lt. did not hit his head on the floor.

2

3    136. Lt. Elder infact suffered a superficial scratch to his mouth. And

4    was not assaulted by plaintiff.

5

6    137. The prosecutor of Doddridge County seems to agree, and filed a motion

7    to dismiss the charge of assault & battery that Lt. Elder falsely accussed the

8    plaintiff of doing. (Ex- )

9

10   138. The defendants waited nearly a whole week before they allowed him

11   to speak with WV state police, to allow is injuries to subside and try to get

12   the swelling to his head and face to go down.

13

14   139. Officer Anderson did take numerous photo's of plaintiffs injuries

15   on May 16, 2012. when he meet with the plaintiff at NCRJ.

16

17   140. Plaintiff was transferred to Mount Olive Correctional Complex on Aug. 14th

18      2012.

19   141. Plaintiff was placed on a (18)month Q.O.L Adseg-program because of

20   the fabricated assault on a officers story that Lt. Elder and numerous other guards

21   Lied about to cover up the use of excessive force incident.

22

23   142. Plaintiff is currently on the Q.O.L program/Adseg at Mocc. The

24   plaintiff would have been placed on the yard had it not been for the made up

25   charges against him and placed in mainline population (General pop.)

26

27

## COUNT I - USE OF FORCE

143. Plaintiff incorporates by reference paragraphs 1-143 as if fully set forth verbatim.

144. Defendants Lt. Elder, Stewart, Mays, Richards, Adams, Abner, Fredrick, Hutson, on May 10, 2012 applied or permitted to be applied to Plaintiff force that was unnecessary, unjustified, unreasonable, and for the purpose of maliciously and sadistically causing harm to Plaintiff

145. Defendants Fredrick, and Adams on May 11, 2012 applied or permitted to be applied to Plaintiff force that was unnecessary, unjustified, unreasonable, and for the purpose of maliciously and sadistically causing harm to Plaintiff.

146. The conduct of Defendants, Elder, Stewart, Mays, Richards, Adams, Abner, Fredrick, Hutson, was objectively unreasonable, excessive and unwarranted violation of Plaintiff's clearly established rights of which a reasonable corrections officer should have known pursuant to the Eighth and Fourteen Amendments of the United States Constitution.

147. Defendants Elder, Stewart, Mays, Richards, Adams, Abner, Fredrick, Hutson's actions were willful, wanton, intentional, malicious and done with callous, reckless and deliberate indifference to Plaintiffs safety.

## COUNT II - SUPERVISORY LIABILITY

148. Plaintiff hereby incorporates paragraphs 1-147 as if fully set forth herein verbatim.

149. Defendants Trent, Lopez and O'Dell were at all times relevant supervisors of Defendants. Elder, Stewart, Mays, Richards, Adams, Abner, Fredrick and Hutson and other Correctional officers at NCRJ.

150. Upon developement of information from discovery and upon belief, Plaintiff states Defendants Elder, Stewart, Mays, Richards, Adams, Abner, Fredrick and Hutson prior to the May 10 & 11, 2012 beating, used several times or permitted other correctional officers to use force against inmates, not for the purpose of restraint or discipline, but for the malicious and sadistic purpose to punish.

151. Defendants Trent, Lopez, O'Dell, Elder, Stewart, Mays, Richards, Adams, Abner, Fredricks and Hutson's conduct was pervasive and constituted and unreasonable risk of constitutional injury to plaintiff and to inmates like Plaintiff.

152. Defendants Trent, Lopez and O'Dell knew or should have known of the pervasive and widespread conduct of named defendants and other Correctional officers. Never the less, these defendants failed to properly investigate, train, supervise, acknowledge, address and discipline the named defendants and other Correctional officers at NCRJ to prevent injuries such as those sustained by Plaintiff. (Ex- ) (need discovery)

153. Defendants Trent, Lopez and O'Dell's failure to properly investigate train, supervise, acknowledge, address and discipline the named Defendants and other correctional officers amounts to deliberate indifference or tacit authorization of unconstitutional use of force against inmates.

154. Defendants Trent, Lopez and O'Dell's deliberate indifference posed

1 a substantial risk of harm to inmates like the Plaintiff and proximately and
2 directly caused the injuries of which Plaintiff complains.

3

4        155. The conduct of Defendants Trent, Lopez and O'Dell was object-
5 ively unreasonable and unwarranted violation of Plaintiff's clearly established
6 constitutional rights pursuant to the Eighth and Fourteenth Amendments to
7 the U.S. Constitution, which reasonable persons in the Defendants' positions
8 should have Known. (EX-32 & 32(a))

9

10       156. The conduct of Defendants Trent, Lopez and O'Dell was willful,
11 wanton, intentional, and malicious and done with callous, reckless, and delib-
12 erate indifference to Plaintiff's safety.(EX-33) & (EX-34) & (EX-35)

13

14                    COUNT III – RETALIATION

15       157. Plaintiff hereby incorporates paragraphs 1-156 as it fully set forth
16 herein verbatim.

17

18       158. Between the months of January 2012 & June 2012 plaintiff was verbally
19 threatened with physical threats, by numerous C.O.'s.

20

21       159. On May 9, 2012 plaintiff was threatened when he was told that some-
22 body would shut his mouth for him. See, (Statement of Facts), (Line 20 at 20).

23

24       160. On May 10, 2012, in holding cell in booking, plaintiff was told that if he
25 filed (a grievance) "paperwork" that he would get what he got that day; (a
26 vicious beating), in retaliation. Plaintiff was also told that if he didnt leave it
27 alone he would be charged with an outside Court assault case for battery on a

                        page 28 of 30

1  officer. Both retaliatory threats were carried out on plaintiff.

2

3      161. Plaintiff was told that his life would be miserable when he got to Mocc
4  and that Trent had all kinds of buddies up there. Plaintiff was placed on Ad.seg. (18) mo-
5  nth long program at when he arrived at Mocc just like he was told.

6

7      162. On May 11, 2012 during the vicious beating in the shower, plaintiff defec-
8  ated on himself. C.O. Fredricks degraded and humilated and embarrassed the
9  Plaintiff by laughing and stating that, "Look at cha, you done shit all over your-
10 self."

11

12     163. All the above, and mentioned in statement of facts verbatim set forth in
13 paragraphs 1-163. Threats, promises, harrassment, physical threats, and both
14 use of forces, along with falsifing documents, Lying and placing Plaintiff in Ad-
15 seg/Q.O.L here at Mocc were done in retaliation to the plaintiff, to prevent
16 him from filing any Litigation on the inappropriate actions and conduct of all named
17 defendants and were for purposes of Litigating and filing this law suit against
18 them.

19

20     164. Plaintiff was retaliated against for but not limited to; filing of griev-
21 ances, for his rights & Use's of Excessive force; Plaintiff's Mother contacting the
22 WV State Police, Plaintiff, "not letting it go"; and for adamently pursueing this
23 current Lawsuit actions against Defendants.

24

25

26     165. Defendants threats, harrassment, assaults and others actions set forth
27 above, is retaliation. (All Exhibits are attached hereto this Complaint)

166. Defendants Elder, Trent, Fredricks, Abner, Mays, Richards' conduct is objectively unreasonable, and an unwarranted violation of Plaintiff's clearly established rights of which a reasonable Correctional officers should Know pursuant to the First and Fourteenth Amendments to the U.S. Constitution.

167. Defendants Elder, Trent, Fredricks, Abner, Mays, Richards' actions were willful, wanton, intentional, malicious, and done in callous disregard of Plaintiff's Constitutional rights.

WHEREFORE, Plaintiff requests the Court award damages, jointly and severally, as follows:

a. Compensatory damages for past, present and future medical expenses; past, present and future pain and suffering, loss of enjoyment of life, mental and emotional distress and humiliation;

b. Punitive damages

c. Plaintiff request that he be immediately taken off of the Q.O.L program/Adseg and placed in the general population, for obvious reasons, he was placed on the Q.O.L/Adseg because of this action and for filing this action for retalitory reasons. He was placed on Adseg & the Q.O.L program based upon the false reports, Lies and did not assault anybody that day.

d. Any other relief determined by this Court to be just and appropriate.

PRAYER FOR RELIEF

## PRAYER FOR RELIEF

168. Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of Defendants named here in this complaint, and as alleged herein, unless Plaintiff is granted they relief he request. The need for relief is critical because the rights of, and the rights at issue are paramount under the United States Constitution and the laws of the United States.

169. WHEREFORE, the plaintiff respectfully and humbly request that this Court grant him the following relief:

A. Declare that this suit is maintainable as a 1983 USC. 42 action.

B. Adjudge and declare that the acts, omissions, policies, and practices of Defendants, and their agents, employees, officials, and all persons acting in concert with them under color of state law or otherwise, described herein are in violation of the rights of prisoner, Plaintiff and other inmates simularly situated, under the Cruel and Unusual Punishments clause of the Eighth, and the Fourteenth and the First Amendments, which grant constitutional protection to the Plaintiff.

C. Preliminarily and permanently enjoin Defendants, their agents, employees, officials, and all persons acting in concert with them under color state Law, from subjecting prisoner Plaintiff to the illegal and unconstitutional conditions, acts, ommissions, policies, and practices set forth above.

1    D. Order Defendants and their agents, and all persons acting in

2 concert with them under color of state law, to develop and implement, as

3 soon as practical, a plan to eliminate the substantial risk of serious harm

4 that Plaintiff suffered due to Defendants named herein use of excessive

5 force and unsupervised actions stated above in Complaint.

6

7    E. Retain jurisdiction of this case untill Defendants have fully

8 devevoloped a system and compiled with the Orders of this Court, and there

9 is a reasonable assurance that Defendants will continue to comply in the

10 future absent continuing jurisdiction; and

11

12    F. Order the Defendants to replace the Plaintiffs glasses that

13 were broke during the Use of excessive force.

14

15    G. Order the Defendants to treat and properly medicate ALL injuries

16 noted, and documented as a result of the Use of excessive force.

17

18    H. Award Plaintiff the cost of this suit, and an reasonable attorn-

19 eys' fees and litigation expenses pursuant to 42 U.S.C. 1988, and other app-

20 licable law;

21

22    I. Award such other and further relief as the Court deems just and

23 proper.

24    State of  WV
      County of  Fayette

25    The foregoing instrument was                                    Pro-se.
      sworn and acknowledged before

26    me this 13th day of August 2013.        RESPECTFULLY SUBMITTED,
      my commission expires

27    15 march 2020

      [signature] Notary                      ROY FRANKLIN HILLBERRY II
                                              # 55498

OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
Lisa R. Frye
1 Mountainside Way
Mt. Olive, WV 25185
My Commission Expires March 15, 2020

# Verification

1  Pursuant to 28 U.S.C. §1746, I declare and
2  verify under the penalty of purjury under the laws of the
3  United States of America that the foregoing is true and correct.
4  Except as to matters alleged on information & belief, as to those, I belive
5  then to be true.                    Executed on August 13, 2013

9                         RESPECTFULLY SUBMITTED
10
11                         ROY FRANKLIN HILLBERRY II
12                                        plaintiff
13                         Pro Se
14                         Roy Franklin Hillberry II #55498
15                         1 Mountainside Way
16                         Mt. Olive, W.V. 25185

18  State of WV
19  County of Fayette

21  The foregoing instrument was
22  acknowledged before me this
23  13th day of August 2013.
24  My commission expires
25  15 March 2020.
26

OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
Lisa R. Frye
1 Mountainside Way
Mt. Olive, WV 25185
My Commission Expires March 15, 2020